JAN HARRIS
101 Aupuni Street, # 420
Hilo, Hawaii, 96720
541.207.4026
jhk29@hotmail.com
Self-Represented

FILED
JAN 23 2025
PAID NC
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV25 0807 KAW

| | |
|---|---|
| JAN HARRIS, an individual *Plaintiff*, v. CHARLES SCHWAB & CO, a California corporation *Defendant* | Case No.: COMPLAINT FOR VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT 1934 AND FOR BREACH OF TRUST |

## COMPLAINT

Plaintiff, Jan Harris ("me", "my", "I") brings this action against Defendant Charles Schwab & Co. and states and alleges as follows:

### Preliminary Statement

Defendant Charles Schwab & Co. is the federally regulated stockbroker responsible for maintaining my property (funds and securities) in my four federally regulated securities accounts. The Exchange Act 1934 and the Exchange Act rules thereunder regulate how Charles Schwab & Co. handles my property in my securities accounts; regulate the execution, clearing, and settling of my buy and sell orders for those securities accounts; and impose disclosure and recordkeeping obligations on Charles Schwab & Co.

Defendant Charles Schwab & Co. is violating § 10(b) of the Exchange Act 1934 and rules 10b-3 and 10b-5 thereunder by purposely, creating and furnishing to me on its internet website, monthly account statements with fictitious securities positions for 2,420,000 shares of Bancorp International Group Inc. Defendant knows it is creating and furnishing to me on its internet website, monthly account statements with fictitious securities positions for shares of Bancorp International Group Inc. Defendant knows there have never been any shares of Bancorp International Group Inc. purchased for any of my securities accounts. Defendant knows it holds zero (0) shares of Bancorp International Group Inc. on my behalf.

**The Parties**

1. Defendant Charles Schwab & Co. is a California corporation that does business nationwide as a federally registered stockbroker.

2. I am a resident of Hawaii and a customer of Charles Schwab & Co.

**Jurisdiction And Venue**

3. Because I am alleging violations of § 10(b) of the Exchange Act 1934 and rules 10b-3 and 10b-5 thereunder, this court has subject matter jurisdiction pursuant to § 27 of the Exchange Act 1934. 15 U.S.C. §78aa; 28 U.S. Code § 1331.

4. Venue is proper. Charles Schwab & Co. is a California corporation with offices in San Francisco, California. 15 U.S.C. §78aa; 28 U.S. Code § 1391(b)(3).

**The Legal Status Of Charles Schwab & Co. Under Federal And State Law**

5. Defendant Charles Schwab & Co. is the federally regulated stockbroker responsible for maintaining custody and control of my property (funds and securities) held in my four federally regulated securities accounts.

6. For purposes of the federal securities law, with respect to my property (funds and securities) held in my securities accounts, Charles Schwab & Co. is a "carrying" stockbroker.

7. Under California law, a stockbroker is a fiduciary as a matter of law.

8. For purposes of California fiduciary law, with respect to my property (funds and securities) held in my securities accounts, Charles Schwab & Co. is the trustee of a voluntary express trust.

9. For purposes of California commercial law, with respect to the securities held in my securities accounts, Charles Schwab & Co. is a "securities intermediary". *See* Cal. Com. Code § 8102(a)(14)(B) (defining "securities intermediary").

10. The duties federal law imposes on Charles Schwab & Co. as a "carrying" stockbroker are in addition to, and may render more specific, the duties California law imposes on Charles Schwab & Co. as a fiduciary, and the duties California commercial law imposes on Charles Schwab & Co. as a "securities intermediary". *See* 15 U.S.C. §78bb)(a)(2) ("Except as provided in subsection (f), the rights and remedies provided by this title shall be in addition to any and all other rights and remedies that may exist at law or in equity.").

**The Exchange Act 1934 – Regulation of Securities Transactions**

11. The Exchange Act 1934 regulates interstate securities transactions, and the stockbrokers and intermediaries who effect those securities transactions.

12. As required by the Exchange Act 1934, defendant Charles Schwab & Co is a member of the Financial Industry Regulatory Association (FINRA).

13. To participate in the federally regulated securities markets, retail investors such as myself rely on federally regulated stockbrokers.

14. Exchange Act Rule 15c3-3, (the Customer Protection Rule), defines several terms including the term "securities account". "The term ***securities account*** shall mean an account that is maintained in accordance with the requirements of section 15(c)(3) of the Act (15 U.S.C. 78o(c)(3)) and § 240.15c3-3." 17 C.F.R. § 240.15c3-3(a)(14) (emphasis in the original).

15. A securities transaction begins when a stockbroker executes the customer's buy or sell order and the transaction ends at final settlement.

16. Final settlement is when the ownership of the security is transferred from the seller to the buyer, and the buyer's money is transferred to the seller.

17. The buyer's obligation to pay for the securities, and the seller's obligation to deliver the securities, are conditioned on final settlement of the securities transaction.

18. Until final settlement, the credits and debits the stockbroker makes to its customers' Exchange Act Rule 15c3-3 securities accounts are provisional credits and debits.

**FIGURE 1**

**Execution**

Buyer and seller enter into a legally binding agreement to transfer securities from the seller to the buyer in exchange for money from the buyer to the seller.

**Clearing**

Performing all the necessary steps leading to the settlement, such as posting sufficient margin, and recording the transaction.

**Settlement**

The actual exchange of securities for money, when the securities are titled to the buyer and the money is transferred to the seller.

## Some of Charles Schwab & Co. Obligations Under The Exchange Act 1934 And The Rules Thereunder.

19. With respect to my securities accounts governed by Exchange Act Rule 15c3-3, Charles Schwab & Co. is required to disclose to me, on periodic account statements, the identity and number of shares or units of each security Charles Schwab & Co. is holding on my behalf, and the amount of my uninvested cash. *See* 15 U.S.C. § 78o(h)(3)(B) (penny stocks) and 17 C.F.R. § 240.15g-6(d)(1) thereunder (must provide periodic account statements that disclose "[t]he identity and number of shares or units of each such security held for the customer's account."); 17 C.F.R. § 240.15c3-3(j)(1) (must disclose on periodic account statements the amount of customer's uninvested cash); *See also* FINRA Rule 2231 (account statement rule, broker must include description of any securities positions and money balances).

**Some of Charles Schwab & Co. Fiduciary Obligations Under California Law.**

20. Under California law, a stockbroker is a fiduciary as a matter of law.

21. Under California law governing fiduciaries, Charles Schwab & Co. owes to me a fiduciary duty of loyalty; a fiduciary duty to disclose all material facts relating to the handling of my property (funds and securities) held in my federally regulated securities accounts; a fiduciary duty of care; a fiduciary duty to keep records relating to my property (funds and securities) and fully account to me for all my property (funds and securities) that Charles Schwab & Co. is responsible for holding on my behalf in my securities accounts. *See* Restatements Agency & Trusts; Cal. Civ. Code 2322(c) (agency); Cal. Prob. Code § 15000 *et.seq*. (California Trust law).

**Ownership**

22. In the United States, property ownership vests the owner with certain intrinsic rights, such the right to use the property, and the right to choose the form to hold the property; exclusively, jointly, as a tenant in common, in nominee name, in trust, etc.

23. With respect to property held in trust (held in nominee name), the right to obtain the legal title is an incident to the estate of the cestui que trust (equitable owner).

24. With respect to property held as tenants in common, the right of each tenant to compel a partition is an incident of tenant in common ownership.

**Facts**

25. My four federally regulated securities accounts were established in 2004.

26. Sometime between May 31, 2023 and June 30, 2023, Charles Schwab & Co. assumed responsibility for administering my four federally regulated securities accounts, and accounting for my property (funds and securities) held in those securities accounts.

27. My securities accounts hold penny stocks. *See* 15 U.S.C. § 78c(51)(A) (defining "penny stock" for purposes of the Exchange Act 1934).

28. Charles Schwab & Co. creates monthly account statements for my four securities accounts.

29. Charles Schwab & Co. furnishes those account statements to me on an internet connected website controlled by Charles Schwab & Co.

30. Charles Schwab & Co. is crediting a total of 2,420,000 shares of Bancorp International Group Inc. common stock (a penny stock) to the monthly account statements Charles Schwab & Co. is furnishing to me.

31. Bancorp International Group Inc. is a Nevada corporation.

32. Nevada corporation law vests the owner of Bancorp International Group Inc. common stock with certain rights such as voting rights, dividend rights, appraisal rights, the right to a stock certificate, etc.

33. Nevada corporation law declares "[t]he shares of stock in every corporation shall be personal property" Nev. Rev. Stat. § 78.240.

34. Nevada corporation law declares "every stockholder is entitled to have a certificate .... certifying the number of shares in the corporation owned by the stockholder" Nev. Rev. Stat. § 78.235.

35. On February 13, 2024, via the Charles Schwab & Co. message system, I made a written demand to have the 2,420,000 shares of Bancorp International Group Inc. registered in my own name. I wrote:

> To whom it may concern, I have 4 accounts with Charles Schwab and Charles Schwab is holding for me a total of 2,420,000 shares of Bancorp International Group Inc. in those 4 accounts. I prefer to hold those 2,420,000 shares of Bancorp International Group Inc. in certificate form. Please take the necessary steps to have those 2,420,000 shares issued to me in certificate form. The transfer agent is Empire Stock Transfer, 1859 Whitney Mesa Dr., Henderson, NV 89014, Phone (702) 818-5898. I will pay any fees Empire Stock Transfer charges to issue and mail the stock certificate to me.

36. The Charles Schwab & Co. automated system responded "You may be able to receive physical certificate for Bancorp Inc. . . . To discuss this further, please call or chat in at your earliest convenience."

37. Over the next two months I communicated by telephone with employees of Charles Schwab & Co., and I was told that Charles Schwab & Co. was in communication with both the Depository Trust Company (DTC) (the federally regulated securities depository) and Empire Stock Transfer Inc. (the transfer agent for Bancorp International Group Inc.).

38. On April 16, 2024, Charles Schwab & Co. employee Joe informed me by telephone (nothing in writing) that Charles Schwab & Co. would not be honoring my February 2024 request to register the 2,420,000 shares of Bancorp International Group Inc. in my name because the Depository Trust Company (DTC) had a global lock on the shares.

39. On May 8, 2024, I mailed a letter to Charles Schwab & Co. at its customer service headquarters in Texas and requested specific information regarding the administration of my securities accounts. I requested Charles Schwab & Co. investigate whether the DTC global lock on the shares meant my 2005 purchase orders for 2,420,000 shares of Bancorp International Group Inc. failed to settle. I also reiterated my request for the 2,420,000 shares of Bancorp International Group Inc. to be registered in my name if my purchase orders were settled. I specifically requested Charles Schwab & Co. provide me a written report.

40. On May 17, 2024 I received a do-not-reply email from Charles Schwab & Co. that the matter was under review.

41. Sixty days went by with no report from Charles Schwab & Co.

42. On July 28, 2024 (Sunday) and again on July 29 (Monday), I telephoned Charles Schwab & Co. and inquired about the status of Charles Schwab & Co.'s review of the matter, and whether a written report would be forthcoming.

43. The next day (July 30, 2024) I received electronically four letters (one for each securities account), signed by Charles Schwab & Co. employee Joshua, that confirmed Charles Schwab & Co. is crediting a total of 2,420,000 shares of Bancorp International Group Inc. to my securities accounts, but the letters do not mention the DTC global lock matter.

44. On July 30, 2024, via the Charles Schwab & Co. message system, I wrote:

> Joshua, I assume your message is in response to my May 8, 2024 letter, however, neither your message nor the four attached letters provide the information I am seeking. Does Charles Schwab & Co. have possession or control of the 2,420,000 shares of Bancorp International Group Inc. that your July 30, 2024 letters state Charles Schwab & Co. is crediting to my four securities accounts?
> If the answer is yes, please provide me with the name(s) of the registered owner of the shares. The information regarding the registered owner of the shares should be in Charles Schwab & Co. records.

45. On September 3, 2024, via the Charles Schwab & Co. message system, Jeremy, an employee of Charles Schwab & Co., wrote:

> Dear Jan Harris,
> We appreciate you reaching out to us at Charles Schwab. I hope you are doing well. My name is Jeremy and it is my pleasure to assist you today. So the shares are registered at Charles Schwab For Benefit of You. The stock Bancorp has not traded in a very long time. No other information is available as to what may occur in the future.

46. On December 4, 2024, I emailed Empire Stock Transfer Inc. to inquire about obtaining an official list of the registered shareholders of Bancorp International Group. Empire Stock Transfer responded by email that it is not allowed to provide me that list, but stated that Charles Schwab is the registered owner of only 500 shares of Bancorp International Group Inc., and that Cede & Co. (the Depository Trust Company nominee) is the registered owner of zero (0) shares of Bancorp International Group Inc.

**Violations of § 10(b) and Rules 10b-3 and 10b-5 thereunder.**

47. I rely on my federally regulated stockbroker to safeguard and properly account for my property (funds and securities) in its possession or under its control.

48. I rely on my federally regulated stockbroker to keep the records of my ownership interests in the securities credited to my account statements, and to accurately account to me the amount of my uninvested cash.

49. I rely on my the federally regulated stockbroker administering my securities accounts to process my securities transactions from start to finish.

50. In 2005, I placed orders to purchase a total of 2,420,000 shares of Bancorp International Group Inc. for my securities accounts.

51. Upon execution of my purchase orders, the federally regulated stockbrokers that were administering my securities accounts at that time debited a total of $17,236.53 from my securities accounts to cover the cost to purchase the 2,420,000 shares of Bancorp International Group Inc. that I placed orders for.

52. The debit of $17,236.53 to pay for 2,420,000 shares of Bancorp International Group Inc. is provisional until those purchase transactions settle.

53. In June 2023 Charles Schwab & Co. voluntarily assumed responsibility for administering my securities accounts.

54. Charles Schwab & Co. knew at the time it assumed responsibility for administering my four federally regulated securities accounts that it had an obligation under federal law to close out all unsettled transactions in my securities accounts.

55. In addition, Charles Schwab & Co. has an ongoing recordkeeping obligation under federal law to perform quarterly securities counts and determine whether the shares of stock it is crediting to my securities accounts do in fact exist, and to identify the location where those shares are held. *See* 17 C.F.R. § 240.17a-3(a)(5); 17 C.F.R. § 240.17a-13.

56. Charles Schwab & Co. is the maker of the monthly account statements furnished to me for my securities accounts.

57. Charles Schwab & Co. controls the credits and debits it makes to the account statements it is creating and furnishing to me.

58. Charles Schwab & Co. furnishes the account statements to me via the internet at a website controlled by Charles Schwab & Co.

59. The monthly account statements that Charles Schwab & Co. creates and furnishes to me, state Charles Schwab & Co. is holding a total of 2,420,000 shares of Bancorp International Group Inc. on my behalf.

60. I relied on my January 2024 accounts statements to correctly account for my securities ownership when, in February 2024, I requested Charles Schwab & Co. register 2,420,000 shares of Bancorp International Group Inc. in my name and deliver those shares to me in certificate form.

61. Charles Schwab & Co. knows that final settlement of my purchase orders for 2,420,000 shares of Bancorp International Group Inc. has not occurred.

62. Charles Schwab & Co. knows the reason it cannot register 2,420,000 shares of Bancorp International Group Inc. is not because of a DTC global lock, but because my purchase orders for the shares remain unsettled and consequently zero (0) shares of Bancorp International Group Inc. have been purchased for my securities accounts.

63. Charles Schwab & Co. knows it holds zero (0) shares of Bancorp International Group Inc. on my behalf.

64. Instead of doing the right thing and recrediting the $17,236.53 back to my securities accounts, Charles Schwab & Co. is leaving my purchase orders executed but unsettled.

65. Between July 2023 and December 2024, Charles Schwab & Co. has created and furnished to me a total of fifty-seven (57) account statements with fictitious positions for shares of Bancorp International Group Inc.

66. Charles Schwab & Co. knows that the account statements it is creating and furnishing to me on its internet website contain fictitious positions for shares of Bancorp International Group Inc.

67. Every one of those fifty-seven (57) account statements furnished to me falsely implies Charles Schwab & Co. is holding (has possession or control of) a specific number of shares of Bancorp International Group Inc. on my behalf when Charles Schwab & Co. knows that Charles Schwab & Co. is holding zero (0) shares of Bancorp International Group Inc. on my behalf.

68. Exchange Act rules require unsettled transactions be closed out. The motivation for Charles Schwab & Co. to violate those rules and leave my purchase orders for 2,420,000 shares of Bancorp International Group Inc. executed but unsettled, is because Charles Schwab & Co. retains control of my $17,236.53 up until the moment of final settlement, and by an accounting trick, Charles Schwab & Co. obtains the opportunity (but not the legal right) to use my $17,236.53 as collateral for its own business purposes.

69. My securities accounts are cash accounts.

70. I have never authorized any federally regulated FINRA member stockbroker to use my uninvested cash for its own purposes.

71. 17 C.F.R. § 240.15c3-3(j)(2)(i), and California fiduciary law, prohibit Charles Schwab & Co. from using my $17,236.53 for any purpose other than to purchase 2,420,000 shares of Bancorp International Group Inc. for my securities accounts.

72. My $17,236.53 has yet to be used to purchase any shares of Bancorp International Group Inc. for my securities accounts.

73. By crediting my account statements with fictitious securities positions for 2,420,000 shares of Bancorp International Group Inc., while at the same time leaving my purchase orders for those shares unsettled, Charles Schwab & Co. violates the Customer Protection Rules that prohibit Charles Schwab & Co. from putting my funds within the reach of its creditors. This accounting trick by Charles Schwab & Co. violates the Exchange Act rules that prohibit Charles Schwab & Co. from using my property (funds and securities) as collateral for the its own business purposes. *See* 17 C.F.R. § 240.15c3-3(b—j) (prohibiting stockbroker from using customer funds and securities for stockbroker's own purpose); *See also* FINRA Rule 2150(a) (improper use of customer property is "patently antithetical to the high standards of commercial honor and just and equitable principles of trade that FINRA seeks to promote").

74. With respect to matters withing the scope of its duties as my agent, or as trustee of my property, Charles Schwab & Co. owes me a fiduciary duty to disclose the whole truth.

75. I rely on my account statements to disclose to me truthfully the securities I own and the amount of my uninvested cash available for me to invest or to withdraw on demand.

76. Charles Schwab & Co. knows it is not properly accounting for, or truthfully disclosing to me, the securities I own or the amount of my uninvested cash.

77. Charles Schwab & Co. controls my $17,236.53 up until the moment my purchase orders for 2,420,000 shares of Bancorp International Group Inc. settle.

78. The standard settlement cycle for most securities transactions processed through the federally regulated system is mandated to be T+1 — meaning the transactions must settle one business day after the trade is executed. *See* 17 C.F.R.§ 240.15c6-1 (regulating time and manner of stockbroker settlement of securities transactions).

79. Charles Schwab & Co. knows that leaving my purchase orders for 2,420,000 shares of Bancorp International Group Inc. unsettled since July 2023 is an extreme departure from the T+1 mandated for purchase transactions processed through the federally regulated clearance and settlement system.

80. Charles Schwab & Co. knows it must close out, on its books, my purchase orders for 2,420,000 shares of Bancorp International Group Inc. and recredit the purchase price ($17,236.53) back to my securities accounts.

81. Charles Schwab & Co. is knowingly and intentionally leaving my purchase orders for 2,420,000 shares of Bancorp International Group Inc. open on its books for an improper purpose.

82. Charles Schwab & Co. is purposely concealing from me the true amount of my uninvested cash by crediting my securities accounts with fictitious securities positions for 2,420,000 shares of Bancorp International Group Inc.

83. Charles Schwab & Co. is knowingly and intentionally depriving me of the use of my $17,236.53 for an improper purpose.

84. Charles Schwab & Co. is injuring me by depriving me of the use of $17,236.53 of my uninvested cash.

85. In addition to creating, and furnishing to me each month, account statements with fictitious securities positions for 2,420,000 shares of Bancorp International Group Inc, Charles Schwab & Co. is using employees, by way of the telephone and by way of the Charles Schwab & Co. internet connected website, to mislead me and conceal from me the truth as to why Charles Schwab & Co. cannot register 2,420,000 shares of Bancorp International Group Inc. in my name.

86. On April 16, 2024 Charles Schwab & Co. employee Joe, by way of telephone, informed me that Charles Schwab & Co. would not be honoring my request to have 2,420,000 shares of Bancorp International Group Inc. delivered to me in certificate form because of a DTC global lock on the shares. Charles Schwab & Co, intended Joe's phone call to mislead me into believing that the DTC has placed a restriction on the 2,420,000 shares of Bancorp International Group Inc. that Charles Schwab & Co. is crediting to my account statements. (*See* ¶ 38). That is not the truth. Neither the DTC rules nor its restrictions govern when or how Charles Schwab & Co. closes out my unsettled purchase orders, or govern what credits or debits Charles Schwab & Co. makes to my account statements. Instead of telling me the truth, Charles Schwab & Co. attempted to shift the blame for its fraudulent conduct onto a third party (the DTC).

87. Sometime after receiving my May 8, 2024 letter, but before July 30, 2024 Charles Schwab & Co. employee(s) reviewed the matter that was the subject of my May 8, 2024 letter and made a conscious business decision not to respond to me in writing; not to disclose to me material facts relating to the administration of my securities accounts; not to disclose to me the material fact that my purchase orders for 2,420,000 shares of Bancorp are unsettled; not to disclose to me the material fact that zero (0) shares of Bancorp International Group Inc. have been purchased for any of my securities accounts; and not to disclose to me the material fact that Charles Schwab & Co. is holding zero (0) shares of Bancorp International Group Inc.

88. Even after receiving my May 8, 2024 letter, rather than do the right thing and close out the transactions on its books, Charles Schwab & Co. made a conscious business decision to continue its fraudulent practice of creating and furnishing to me account statements with fictitious positions for 2,420,000 shares of Bancorp International Group Inc.

89. On July 30, 2024, Charles Schwab & Co. through employee Joshua, by way of the Charles Schwab & Co. website message system stated a half-truth in response to my inquiry as to whether Charles Schwab & Co. had possession or control of 2,420,000 shares of Bancorp International Group Inc. It is true that Charles Schwab & Co. is crediting 2,420,000 shares of Bancorp International Group Inc. to my securities accounts, but what Joshua omitted is that Charles Schwab & Co. does not have possession or control of any shares of Bancorp International Group Inc. to back up those credits. (*See* ¶ 43)

90. On September 3, 2024, via the Charles Schwab & Co. message system, in response to my inquiry "who is the registered owner of the shares", Charles Schwab & Co. through employee Jeremy stated "the shares are registered at Charles Schwab For Benefit of You". But Charles Schwab & Co. knew by speaking to Empire Stock Transfer Inc. in February, March, and April 2024 that Charles Schwab is the registered owner of only 500 shares of Bancorp International Group Inc. (See ¶¶ 37, 45, 46)

91. As a result of the conduct described above, Charles Schwab & Co. is knowingly and intentionally violating Section 10(b) of the Exchange Act and Rule 10b-3 thereunder, which makes it unlawful for any broker or dealer, directly or indirectly, to use or employ, in connection

with the purchase or sale of any security, any act, practice, or course of business defined by the Commission to be included within the term "manipulative, deceptive, or other fraudulent device or contrivance," as such term is used in Section 15(c) of the Exchange Act. In turn, the term "manipulative, deceptive, or other fraudulent device or contrivance", in Exchange Act Rule 10b-3 is defined by Exchange Act Rule 15c1-2, to include any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. *See* 17 C.F.R. § 240.15c1-2; 17 C.F.R. § 240.10b-3.

92. As a result of the conduct described above, Charles Schwab & Co. is knowingly and intentionally violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, which make it unlawful for any person, directly or indirectly, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5(a), (b) & (c).

93. As a result of the conduct described above, Charles Schwab & Co. is committing breaches of trust under California law.

**FIRST CLAIM**

Violations of Section 10(b) of the Exchange Act and Rule 10b-3 thereunder
(anti-fraud provisions)

94. Paragraphs 1 through 93 are realleged and incorporated by reference as if set forth fully therein.

95. Defendant Charles Schwab & Co. is a broker within the meaning of Section 3(a)(4) of the Exchange Act. 15 U.S.C. § 78c(a)(4).

96. Charles Schwab & Co., while a broker, by engaging in the conduct described above, made use of the instrumentalities of interstate commerce (internet and telephone) to effect transactions in, or to induce or attempt to induce the purchase or sale of securities, by means of manipulative, deceptive, or other fraudulent devices or contrivances.

97. Charles Schwab & Co.'s manipulative, deceptive and fraudulent devices or contrivances include purposely creating and furnishing to me account statements with fictitious securities positions, misrepresenting to me that securities transactions with certain characteristics occurred, and that securities were held in my accounts when no such transactions had been finalized, and no such securities have ever been held in my securities accounts.

98. Charles Schwab & Co. is the maker of the account statements furnished to me with the fictitious securities positions for shares of Bancorp International Group Inc.

99. On or after December 31, 2024 Charles Schwab & Co. created and furnished to me an account statement that contains fictitious securities positions for 2,420,000 shares of Bancorp International Group Inc.

100. As of January 1, 2025, Charles Schwab & Co. has created and furnished to me fifty-seven (57) account statements with the fictitious securities positions for shares of Bancorp International Group Inc.

101. When Charles Schwab & Co. furnished to me the account statements described above, Charles Schwab & Co. knew they included fictitious securities positions for shares of Bancorp International Group Inc.

102. Charles Schwab & Co. knew the account statements described above included fictitious securities positions for shares of Bancorp International Group Inc. when it chose to remain silent in the face of my May 8, 2024 letter inquiring about the credits to my securities accounts and the credits to my account statements for shares of Bancorp International Group Inc.

103. Charles Schwab & Co. knew its employees were misstating to me, and concealing from me, material facts in response to my inquiries about the credits to my securities accounts and the credits to my account statements for shares of Bancorp International Group Inc.

104. Charles Schwab & Co. is responsible for creating and furnishing to me the account statements with fictitious securities positions described above.

105. Charles Schwab & Co. is responsible for the misstatements, half-truths, and omissions of material facts by its employees described above.

106. Charles Schwab & Co. is responsible for its fraudulent business practice of leaving my securities purchases for shares of Bancorp International Group Inc. open and unsettled, and for the delay recrediting $17,236.53 back to my securities accounts.

107. Charles Schwab & Co. is responsible for its improper use of my $17,236.53 uninvested cash described above.

108. Charles Schwab & Co. is responsible for depriving me of the use of $17,236.53 of my uninvested cash for an improper purpose.

109. Charles Schwab & Co. is injuring me by depriving me of the use of $17,236.53 of my uninvested cash.

110. As described in the paragraphs above, Charles Schwab & Co. violated, and continues to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-3 thereunder, 17 C.F.R. § 240.10b-3.

**SECOND CLAIM**

Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
(anti-fraud provisions)

111. Paragraphs 1 through 93 are realleged and incorporated by reference as if set forth fully therein.

112. Charles Schwab & Co., by engaging in the conduct described above, made use of the instrumentalities of interstate commerce (internet and telephone) to effect transactions in, or to induce or attempt to induce the purchase or sale of securities, by means of manipulative, deceptive, or other fraudulent devices or contrivances.

113. Charles Schwab & Co.'s manipulative, deceptive and fraudulent devices or contrivances include purposely creating and furnishing me account statements with fictitious securities positions, misrepresenting to me that securities transactions with certain characteristics occurred, and that securities were held in my accounts when no such transactions had been finalized, and no such securities have ever been held in my securities accounts.

114. Charles Schwab & Co. is the maker of the account statements furnished to me with the fictitious securities positions for shares of Bancorp International Group Inc.

115. On or after December 31, 2024 Charles Schwab & Co. created and furnished to me an account statement that contains fictitious securities positions for 2,420,000 shares of Bancorp International Group Inc.

116. As of January 1, 2025, Charles Schwab & Co. has created and furnished to me fifty-seven (57) account statements with the fictitious securities positions for shares of Bancorp International Group Inc.

117. When Charles Schwab & Co. furnished to me the account statements described above, Charles Schwab & Co. knew they included fictitious securities positions for shares of Bancorp International Group Inc.

118. Charles Schwab & Co. knew the account statements described above included fictitious securities positions for shares of Bancorp International Group Inc. when it chose to remain silent in the face of my May 8, 2024 letter inquiring about the credits to my securities accounts and the credits to my account statements for shares of Bancorp International Group Inc.

119. Charles Schwab & Co. knew its employees were misstating to me, and concealing from me, material facts in response to my inquiries about the credits to my securities accounts and the credits to my account statements for shares of Bancorp International Group Inc.

120. Charles Schwab & Co. is responsible for creating and furnishing to me the account statements with fictitious securities positions described above.

121. Charles Schwab & Co. is responsible for the misstatements, half-truths, and omissions by its employees described above.

122. Charles Schwab & Co. is responsible for its fraudulent business practice of leaving my securities purchases for shares of Bancorp International Group Inc. open and unsettled, and for the delay recrediting $17,236.53 back to my securities accounts.

123. Charles Schwab & Co. is responsible for its improper use of my $17,236.53 uninvested cash described above.

124. Charles Schwab & Co. is responsible for depriving me of the use of $17,236.53 of my uninvested cash for an improper purpose.

125. Charles Schwab & Co. is injuring me by depriving me of the use of $17,236.53 of my uninvested cash.

126. As described in the paragraphs above, Charles Schwab & Co. violated, and continues to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a), (b) & (c) thereunder, 17 C.F.R. § 240.10b-5(a), (b) & (c).

**THIRD CLAIM**
Breach of Trust

127. Paragraphs 1 through 126 are realleged and incorporated by reference as if set forth fully therein.

128. The court has subject matter jurisdiction to hear my Breach of Trust claims pursuant to 28 U.S.C. § 1367 (a district court has jurisdiction over state law claims that derive from a common nucleus of operative facts.).

129. Under California law, a stockbroker is a fiduciary as a matter of law.

130. Under California law, with respect to my Exchange Act Rule 15c3-3 securities accounts, and the purchase and sale transactions made for those securities accounts, Charles Schwab & Co. owes to me the general fiduciary duties of: 1) loyalty (honesty, good faith, and fair dealing), 2) care (measured by the standards of his profession), and 3) disclosure (full disclosure). *See* Restatement (First, Second, & Third) Agency; Restatement (Second) Trusts; Cal. Civ. Code 2322(c) (agency); Cal. Prob. Code § 15000 *et.seq*. (California Trust law).

131. Under California law, common and statutory, Charles Schwab & Co. has ongoing fiduciary duties with respect to the administration of my Exchange Act Rule 15c3-3 securities accounts which, under California law are common law express trusts. Some of the fiduciary duties Charles Schwab & Co. owes to me are: a duty not to use my property other than as I direct; a duty not to use my property for any purpose unconnected with the trusts; a duty to keep records and fully account to me for my property held in those trusts; and a duty to, on my request, provide me information regarding Charles Schwab & Co. administration of my trusts.

132. Some of the fiduciary duties Charles Schwab & Co. owes to me under California law are rendered more specific by the Exchange Act rules and the FINRA rules governing

stockbrokers. *See* 17 C.F.R. § 240.15g-6(d)(1) (provide to me, at least quarterly, account statements that truthfully disclose the identity and number of units of each penny stock held in my securities account (loyalty, care, disclosure)); 17 C.F.R. § 240.15c3(j)(1) (truthfully disclose to me at least quarterly on account statements the amount of my uninvested cash (loyalty, care, disclosure)); 17 C.F.R. § 240.15c3-3(e), 17 C.F.R. § 240.15c3-3 (j)(2)(i) (limitations on Charles Schwab & Co. use of my uninvested cash (loyalty, care)); 17 C.F.R. § 240.17a-3(a)(5), 17 C.F.R. § 240.17a-13 (record keeping rules; quarterly securities counts (care, disclosure)); FINRA Rule 2010 (High Commercial Honor and Just and Equitable Principles of Trade (loyalty, care, disclosure)); FINRA Rule 2150(a) (prohibiting a member from making improper use of a customer's securities or funds (loyalty, care)); and FINRA Rule 2231 (account statement rule (loyalty, care, disclosure), truthfully disclose to me at least quarterly on account statements my securities positions and the amount of my uninvested cash).

133. A breach of trust occurs when Charles Schwab & Co. violates any duty law or equity lays upon it with respect the administration of my securities accounts and the handling of my property (funds and securities) in those securities accounts.

134. Charles Schwab & Co. is committing a breach of trust under California law by creating and furnishing to me account statements with fictitious positions for shares of Bancorp International Group Inc.

135. Charles Schwab & Co. is committing a breach of trust under California law by withholding from me, for its benefit not mine, the use of my $17,236.53.

136. Charles Schwab & Co. is committing a breach of trust under California law by depriving me of the use of my $17,236.53 uninvested cash.

137. Charles Schwab & Co. is acting in bad faith by consciously disregarding its regulatory and fiduciary duties to close out, on its books, my purchase orders for 2,420,000 shares of Bancorp International Group Inc.

138. Charles Schwab & Co. is acting in bad faith by intentionally depriving me of the use of my $17,236.53 uninvested cash.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court grant me the following relief:

1.) An order directing Charles Schwab & Co. to close out, on its books, my purchase orders for 2,420,000 shares of Bancorp International Group Inc. and recredit back to my securities accounts my $17,236.53, plus interest thereon;

2.) The court grant me other or additional relief as is just and proper.

DATED: January 10, 2025

Respectfully submitted,

Jan E. Harris

Jan Harris
101 Aupuni Street, Apt. 420
Hilo, Hawaii 96720
541.207.4026
jhk29@hotmail.com
*Pro Se Plaintiff*